IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI‘I

| | |
|---|---|
| DEREK AGUILERA,<br><br>Plaintiff,<br><br>vs.<br><br>COUNTY OF KAUAI,<br><br>Defendant. | Case No. 25-cv-00485-DKW-RT<br><br>**ORDER GRANTING DEFENDANT COUNTY OF KAUAI'S MOTION TO DISMISS**[1] |

On June 29, 2026, Defendant County of Kauai ("County") moved to dismiss *pro se* Plaintiff Derek Aguilera's Second Amended Complaint ("SAC"), Dkt. No. 30, asserting that Aguilera had—once again—failed to state a claim, Dkt. No. 31. Having reviewed the SAC, the parties' briefs, and relevant authority, the Court agrees that dismissal is appropriate. Accordingly, the motion to dismiss is GRANTED without leave to amend, as explained below.

## FACTUAL & PROCEDURAL BACKGROUND

### I. The SAC

Aguilera's claims concern real property located at 5691-A Hauaala Road, Kapaa, HI 96746 ("Property"), a residence containing an upper and lower unit. Dkt.

[1]Pursuant to Local Rule 7.1(c), the Court finds these matters suitable for disposition without a hearing.

No. 30 ¶ 1. The Property was constructed in or around 2007, and County records show a flood elevation certificate was issued for the Property at that time.[2] *Id.* ¶ 16. On or about July 2, 2015, County inspectors noted that the Property's flood elevation certificate had been "waived." *Id.* ¶ 18. On July 8, 2015, the County issued a Certificate of Occupancy for the Property, based on a final approval by inspectors who determined that the Property was in full compliance with all building and zoning regulations (including flood certificate compliance). *Id.* ¶ 19. On August 26, 2015, however, the County "reversed" the Certificate of Occupancy because of the erroneous belief that "no elevation certificate was on file." *Id.* ¶ 20.

On February 28, 2023, the County issued a certificate stating that the Property had no variances, outstanding nonconforming uses or structures, or violations of County building or zoning regulations. *Id.* ¶ 22. On October 6, 2023, Aguilera purchased the Property in reliance on the County's representation of its compliance. *Id.* ¶ 23.

In November 2023, the County received an anonymous complaint regarding the Property. *Id.* ¶ 25. In response, on December 11, 2023, County inspectors investigated the Property and informed Aguilera that the presence of "kitchen/wet bar components, cabinets countertops, bar sink, plumbing fixtures, electrical

[2]Aguilera claims that "[e]levation certificates do not expire," which the Court accepts as true for purposes of this Rule 12 motion. Dkt. No. 30 ¶ 16.

components, and related improvements" in the lower unit violated County flood regulations. *Id.* ¶ 27. To obtain the County's approval and avoid penalties, Aguilera removed the lower unit's "kitchen/wet-bar components." *Id.* ¶ 28. Despite this, in April and November 2024, the County issued Notices of Apparent Violation concerning the Property, which stated that the 2015 Certificate of Occupancy had been issued in error and identified further renovations needed to avoid penalties. *Id.* ¶¶ 30–32. Aguilera "attempted to resolve the County's claimed compliance issues through County officials, architects, engineers, surveyors, public records requests, and communications with County departments." *Id.* ¶ 36. A county official identified as an "Engineering Tech Support III" responded via email that because the Property had an outstanding violation and was "not afforded a variance," and that the proper course of action was to "rectify the violation to conform with County Ordinance." *Id.* ¶ 37; *see also* Dkt. No. 30-10.

## II. Procedural History

On November 17, 2025, Aguilera initiated this action. Dkt. No. 1. On January 28, 2026, the Court granted the County's motion to dismiss, Dkt. No. 9-1, with leave to amend. Dkt. No. 19. Aguilera filed his First Amended Complaint, Dkt. No. 20, which the County also moved to dismiss, Dkt. No. 21. On May 15, 2026, the Court granted the motion to dismiss, again with leave to amend. Dkt. No. 27.

On June 5, 2026, Aguilera filed his SAC, asserting (1) a Fifth Amendment regulatory takings claim under 42 U.S.C. § 1983; (2) violation of his procedural and substantive due process rights under Section 1983; (3) violation of his Fourteenth Amendment equal protection rights under Section 1983; (4) a takings claim under the Hawaiʻi Constitution[3]; (5) municipal liability pursuant to *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978); (6) negligent misrepresentation; and (7) negligence. Dkt. No. 30 ¶¶ 42–71. Aguilera attached to the SAC a "Notice of Tort Claim", dated June 5, 2026, pursuant to Hawaii Revised Statutes ("HRS") § 46-72. Dkt. No. 30-12.

On June 19, 2026, the County moved to dismiss the SAC, arguing that Aguilera's claims were impermissibly vague or unripe, he failed to adequately plead *Monell* claims, and his negligence and negligent misrepresentation claims were untimely.[4] Dkt. Nos. 31, 31-1. On July 2, 2026, Aguilera responded in opposition, arguing that his claims are ripe, adequately pleaded, and timely. Dkt. No. 34. On August 18, 2026, the County replied, substantially repeating its arguments for dismissal. Dkt. No. 36.

[3]Article I, § 20 of the Hawaiʻi Constitution provides: "Private property shall not be taken or damaged for public use without just compensation."

[4]The County further argued that Aguilera's non-*Monell* claims were deficient as pleaded and the Court should decline supplemental jurisdiction over his state-law claims. Dkt. No. 31-1 at 15–25. The Court does not address these arguments because, as provided below, it grants dismissal on other grounds.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) authorizes the Court to dismiss a complaint that fails "to state a claim upon which relief can be granted." Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). Pursuant to *Ashcroft v. Iqbal*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In addition, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. Accordingly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Factual allegations that only permit the court to infer "the mere possibility of misconduct" do not show that the pleader is entitled to relief as required by Rule 8(a)(2). *Id.* at 679.

The Court liberally construes a pro se pleading. *Eldridge v. Block*, 832 F.2d 1132, 1137 (9th Cir. 1987); *Lopez*, 203 F.3d at 1131 ("[T]he rule favoring liberality in amendments to pleadings is particularly important for the *pro se* litigant.")

(citation and internal quotation marks omitted). However, the Court cannot act as counsel for a pro se litigant, such as by supplying the essential elements of a claim. *Pliler v. Ford*, 542 U.S. 225, 231 (2004); *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

## DISCUSSION

The County moves to dismiss on several grounds, Dkt. No. 31, which the Court addresses below.

### I. Vagueness and Ripeness

The County first argues that Aguilera's claims are both impermissibly vague and unripe. Dkt. No. 31-1 at 5–11.

Regarding vagueness, the County asserts that the SAC leaves out details that are key to Aguilera's claims. For example, the SAC alleges that Aguilera removed the lower-unit kitchen/wet bar fixtures in response to demands by County officials, Dkt. No. 30 ¶ 28, but does not specify which officials made the demands, what penalties Aguilera was attempting to avoid, or why Aguilera removed only those components and not the remaining improvements in the lower-unit (which improvements, according to Aguilera, had also been deemed in violation of County regulations). Dkt. No. 31-1 at 6.

Aguilera's allegations, however, are not so vague as to justify dismissal. The thrust of Aguilera's claims is clear: he purchased the Property in reliance on the

County's assurance that there were no building or zoning violations and, shortly after doing so, he was forced to make costly changes to the Property to avoid penalties that substantially devalued his purchase. *See generally* Dkt. No. 30. The facts as presented in the SAC may lend themselves to further questions and might be meritless for other reasons, but that is not the same as being impermissibly vague. *See Abaxis, Inc. v. Cepheid*, 2011 WL 3298613, at *12 (N.D. Cal. July 22, 2011) ("While the claim might have been more clearly drafted, lack of absolute clarity is not sufficient grounds for finding a claim indefinite.").

As for ripeness, the County argues that Counts I–IV of the SAC should be dismissed because Aguilera never sought a variance from the County that might have relieved him from the demands he claims an unidentified County inspector placed on him. Dkt. No. 31-1 at 7–11. The Court agrees.

"Constitutional challenges to local land use regulations are not considered by federal courts until the posture of the challenges makes them 'ripe' for federal adjudication." *S. Pac. Transp. Co. v. City of Los Angeles*, 922 F.2d 498, 502 (9th Cir. 1990). This ripeness requirement applies to each of Aguilera's claims under Counts I–IV and demands that he demonstrate that a final decision has been made by a governmental body charged with evaluating a properly-made application for a variance. *See Williamson Cnty. Reg'l Plan. Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172 (1985) (holding that a regulatory takings claim is not ripe "until

the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue"); *S. Pac. Transp. Co.*, 922 F.2d at 503 (noting that the *Williamson* rule means that a plaintiff must "meaningful[ly]" request and be denied a variance before a regulatory takings claim is ripe); *Kinzli v. City of Santa Cruz*, 818 F.2d 1449, 1455 (9th Cir. 1987), *amended*, 830 F.2d 968 (9th Cir. 1987) (holding that substantive due process, procedural due process, and equal protection claims were not ripe "until planning authorities and state review entities make a final determination on the status of the property"); *Leone v. Cnty. of Maui*, 284 P.3d 956, 965 (Haw. Ct. App. 2012) (holding that a regulatory takings claim under Hawaiʻi law becomes ripe only after "a final, definitive[] decision by the initial land-use decision-maker regarding how it will apply the regulations at issue to the subject property, which inflicts an actual, concrete injury").

On the current record, Aguilera's claims are not ripe. The Kauai County Code ("KCC") § 15-1.4(c) provides that flood-management decisions for proposed or existing structures are made by the County Engineer and his or her authorized representatives. Section 15-1.7(a) states that:

> A variance . . . may be issued by the County Engineer only upon an application meeting the following standards: (1) There is a good and sufficient cause for requesting a variance; (2) The applicant will suffer exceptional hardship should the variance be denied; (3) A variance is the minimum necessary, considering the flood hazard, to afford relief; and (4) A variance will not increase base flood heights, create

> additional threats to public safety, create extraordinary public expense, create nuisances, cause fraud on or victimization of the public, or conflict with existing local laws or ordinances.

Section 15-1.7(e) further states that applications for variances are submitted to the County Engineer, "signed and stamped by a registered professional engineer or architect," and must include further documentation such as the property plans, flood studies, and evaluations for a variance.

Aguilera alleges in the SAC that he "attempted to resolve" his Property issues "through County officials, architects, engineers, surveyors, public records requests, and communications with County departments." Dkt. No. 30 ¶ 36. At no point, however, does he allege that he applied for a variance in the manner specified by the County Code. Nor does Aguilera state that a final decision was ever made concerning a variance on his Property, likely because he never applied for one.

In both his SAC and his opposition brief, Aguilera points to an email sent to him by a county official that explained the Property had an outstanding violation and was "not afforded a variance." Dkt. Nos. 30-10, 34 at 6–7. This email is more damning than helpful to Aguilera for several reasons. First, it is not clear under what circumstances the email was sent, given that—as already mentioned—Aguilera does not allege ever having made a formal variance application. Second, the official sending the email identifies himself as an "Engineering Tech Support III," without any indication that his tech support position authorized him to speak for the County,

pursuant to KCC Section 15-1.4(c). Dkt. No. 30-10. Aguilera offers no similar message from any governmental body. And third, the email states only that Aguilera was "not afforded a variance." *Id*. This language leaves ambiguous whether the author purports to be *denying* a variance, as Aguilera appears to imply, as opposed to merely acknowledging that a variance does not exist. As is the case elsewhere, the email does not recognize that a variance application has even been submitted.

Aside from this email, Aguilera offers nothing to suggest that he has made a meaningful application for a variance in compliance with the format prescribed by County Code, much less that a final decision on such an application has been issued. *S. Pac. Transp. Co.*, 922 F.2d at 503. Accordingly, the Court agrees with the County that Counts I, II, III, and IV are not ripe and must consequently be dismissed.

## II. *Monell* Claims

As he has done before, Aguilera attempts to bring several municipal liability claims pursuant to *Monell*. Dkt. No. 30 ¶¶ 58–61. And once again, these claims must be dismissed.

In *Monell*, the Supreme Court determined that a municipality could be "sued directly under § 1983 for monetary, declaratory, or injunctive relief where, as here, the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers" or is "visited pursuant to governmental 'custom' even though

such a custom has not received formal approval through the body's official decisionmaking channels." *Monell,* 436 U.S. at 690-691. In addition, a municipality can be liable under Section 1983 for a "failure to train" when "the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). A municipality cannot be held liable under Section 1983 "*solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell*, 436 U.S. at 691 (emphasis in original).

As a result, a plaintiff may allege municipal liability under Section 1983 in one of three ways. First, a municipality can be liable when it or a person with final policymaking authority within the municipality expressly enacts or authorizes a policy respecting a challenged action. *Id.* at 690; *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481–483 (1986) ("The official must also be responsible for establishing final government policy respecting such activity before the municipality can be held liable."). In this regard, a municipality can also be liable when a final policymaker "ratifie[s]" a subordinate's conduct and the basis for it. *Ellins v. City of Sierra Madre*, 710 F.3d 1049, 1066–67 (9th Cir. 2013). Second, a municipality can be liable for a custom that, although not expressly enacted, is "so permanent and well settled" it operates with the force of law. *Monell*, 436 U.S. at 691 (internal quotation marks omitted). Third, a municipality can be liable for a failure to train its

employees when such failure amounts to deliberate indifference towards the rights of its inhabitants. *Canton*, 489 U.S. at 388. In addition, a plaintiff must allege that a policy, custom, or failure to train actually caused a municipality's employees to commit the constitutional deprivation. *Id.* at 391; *Monell*, 436 U.S. at 694.

**a. Failure to Train**

Aguilera briefly states in his SAC that the County "failed to adequately train, supervise, or correct its officials" to prevent violations of "owner's due process rights, takings rights, and reliance interests based on prior County approvals." *Id.* ¶ 61. This single statement is the extent of Aguilera's allegations concerning failure-to-train: he does not provide any allegations or examples of the training the County provides or fails to provide its employees, or how that training or lack thereof actually caused a constitutional deprivation. Aguilera's opposition brief does not remedy these omissions. *See generally* Dkt. No. 34. Because Aguilera's mere mention of a failure-to-train *Monell* claim is not enough, the County's motion to dismiss it is granted. *Ashcroft*, 556 U.S. at 678; *see Hawkes v. Alconcel*, 2025 WL 3527019, at *4 (D. Haw. Dec. 9, 2025) (granting dismissal where plaintiff gave "no indication as to how training was lacking, how additional training would matter, or what measures [municipal defendant] failed to take in training").

**b. Kauai County Code**

Pursuant to *Monell*, Aguilera also alleges that the violations of his constitutional rights "were caused by the County's official policies, decisions, customs, and practices, including but not limited to . . . [KCC] §§ 15-1.4, 15-1.5(a)(3), 15-1.5(b)(3), and 15-1.9, as interpreted and applied by County officials." Dkt. No. 30 ¶ 59. Aguilera claims that these sections of the KCC were used "to retroactively rescind prior approvals and force deconversion of long-recognized living units without pre-deprivation process or compensation." *Id*.

"To allege an unconstitutional policy or practice [under *Monell*], a plaintiff must: (1) identify the challenged policy/custom; (2) explain how the policy/custom is deficient; (3) explain how the policy/custom caused the plaintiff harm; and (4) reflect how the policy/custom amounted to deliberate indifference." *Lococo v. Los Angeles City*, 2024 WL 5275509, at *4 (C.D. Cal. July 11, 2024) (internal quotation marks omitted). Here, Aguilera identifies the portions of the KCC he challenges, Dkt. No. 30 ¶ 59, but fails to explain how or why those cited ordinances are unconstitutional, how each specifically caused the harm in question, or how their application constituted deliberate indifference. Aguilera appears to have challenged these regulations because they were cited in the Notices of Apparent Violation issued by the County, *see* Dkt. Nos. 30-6 & 30-7, but merely listing parts of a municipal code and calling them "unconstitutional" is not enough to state a *Monell* claim. *See Gutierrez v. Yee*, 2017 WL 11505980, at *2 (C.D. Cal. July 25, 2017) (dismissing

*Monell* claim where plaintiff "failed to allege how any of the policies, practices, or customs was deficient").

## III. Negligence and Negligent Misrepresentation

The County argues that Aguilera's remaining state-law claims for negligence and negligent misrepresentation should be dismissed as untimely. Dkt. No. 31-1 at 24–25. The Court agrees.

The timeliness of Hawai‘i state-law negligence and negligent misrepresentation claims is governed by HRS § 657-7, which provides that "[a]ctions for the recovery of compensation for damage or injury to persons or property shall be instituted within two years after the cause of action accrued." *See also Dural v. City & Cnty. of Honolulu*, 658 F. Supp. 3d 855, 877 (D. Haw. 2023) (applying Section 657-7 to state-law negligence claim). In addition, HRS § 46-72 states that:

> Before the county shall be liable for damages to any person for injuries to person or property . . . on account of any negligence of any official or employee of the county, the person injured, or the owner or person entitled to the possession, occupation, or use of the property injured, or someone on the person's behalf, within two years after the injuries accrued shall give the individual identified in the respective county's charter, or if none is specified, the chairperson of the council of the county or the clerk of the county in which the injuries occurred, notice in writing of the injuries and the specific damages resulting, stating fully when, where, and how the injuries or damage occurred, the extent of the injuries or damages, and the amount claimed.

"Under Hawaii law, a claim does not 'accrue and the statute of limitations in § 657-7 does not begin to run, until the plaintiff knew or should have known of the defendant's negligence," meaning that it accrues "the moment plaintiff discovers or should have discovered the negligent act, the damage, and the causal connection between the former and the latter." *Mansha Consulting LLC v. Alakai*, 236 F. Supp. 3d 1267, 1272 (D. Haw. 2017) (internal quotation marks omitted).

Here, Aguilera alleges that he was damaged when he was forced to remove improvements from the lower-level unit of the Property in response to the County's demands. Dkt. No. 30 ¶¶ 27–28. Aguilera does not allege the exact date of the removal, but states that it was done between the County's inspection on December 11, 2023 and the subsequent Notice of Apparent Violation issued on April 30, 2024. *Id*. ¶¶ 27–30. Aguilera did not serve notice of his negligence and negligent misrepresentation claims, however, until June 5, 2026, more than two years later. Dkt. No. 30-12.

In his opposition brief, Aguilera argues that his claims are nevertheless timely because of "later-accruing negligence and negligent misrepresentations" by the County, including the November 2024 Notice of Apparent Violation and the January 28, 2026 email that stated Aguilera was "not afforded a variance." Dkt. No. 34 at 19–20. Aguilera's argument rests upon a misunderstanding: the relevant date under Section 46-72 is when his *injury* occurred as a result of the County's negligent acts,

not when the County committed what Aguilera considers to be additional negligent acts. *See Bernhardt v. Cnty. of Hawai'i*, 2019 WL 4308533, at *3 (D. Haw. Sept. 11, 2019) ("Plaintiff assumes that Section 46-72 provides for a notice period that runs from the date a *claim* accrues. Instead, the express text of Section 46-72 provides for a notice period that runs from the date an *injury* accrues." (emphasis in original)). Indeed, even if the Court assumed that the cited post-June 2024 events were relevant to the limitations period, it would not change the fact that the removal of lower unit improvements prior to April 2024 was the moment damages occurred, at which time Aguilera's tort causes of action were complete and the statute of limitations triggered. His Notice of Tort Claim, filed more than two years later on June 5, 2026, then rendered these tort claims as untimely. *See Bernhardt*, 2019 WL 4308533, at *3 (dismissing negligence claims as untimely for failure to provide notice pursuant to Section 46-72 within two years of injury).

## IV. Leave to Amend

When a complaint fails to state a plausible claim, leave to amend should be given when "justice so requires." Fed. R. Civ. P. 15(a)(2). However, justice does not require leave to amend when (1) it would prejudice an opposing party, (2) it is sought in bad faith, (3) it would produce an undue delay in litigation, (4) it would be futile, or (5) there has been repeated failure to cure a deficiency. *Abagninin v.*

*AMVAC Chem. Corp.*, 545 F.3d 733, 742 (9th Cir. 2008); *AmerisourceBergen Corp. v. Dialysist West, Inc.*, 465 F.3d 946, 951 (9th Cir. 2006).

Here, Aguilera has already had multiple opportunities to amend his pleadings. In its prior orders, the Court informed Aguilera of the deficiencies in his pleadings and how to address them, including regarding the very claims he attempts to once again assert in the SAC. *See* Dkt. Nos. 19 (addressing ripeness of Aguilera's takings and due process claims) & 27 (addressing plausibility and *Monell*). Despite multiple attempts, issues still remain, requiring the Court to dismiss yet again. Because the SAC represents Aguilera's third attempt, the Court declines to grant leave again.[5] *See Ascon Props., Inc. v. Mobil Oil Co.,* 866 F.2d 1149, 1160 (9th Cir. 1989) ("[T]he district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint."); *see also Logan*, 2018 WL 1535487, at *3 (dismissing without leave to amend because the court "previously advised [plaintiff] of the deficiencies with his claims . . . and, rather than addressing those deficiencies, [plaintiff] chose to simply repeat the same allegations"). The SAC is therefore dismissed without leave to amend.

[5]While the Court has not previously addressed the statute of limitations in relation to the new tort claims Aguilera asserts in the SAC, allowing amendment would be futile for the reasons explained above.

## CONCLUSION

For the reasons set forth herein, Defendant's Motion to Dismiss the SAC, Dkt. No. 31, is GRANTED, and the SAC is DISMISSED WITH PREJUDICE and WITHOUT LEAVE TO AMEND.

The Clerk is instructed to enter Judgment pursuant to this Order in favor of the County and to then close this case.

IT IS SO ORDERED.

DATED: September 10, 2026 at Honolulu, Hawai'i.

Derrick K. Watson
Chief United States District Judge